UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

DOLORES MCNAMARA,                        :

                    Plaintiff,    :    12 Civ. 2559 (HBP)

    -against-                     :    OPINION
                                       AND ORDER
THE ASSOCIATED PRESS,             :

                    Defendant.    :

----------------------------------X

          PITMAN, United States Magistrate Judge:

I.   Introduction

          This is an employment discrimination action brought by
a pro se plaintiff against her former employer, the Associated
Press (the "AP").  Construed liberally, plaintiff's complaint
asserts claims under the Age Discrimination in Employment Act
("ADEA") and the New York State Human Rights Law ("NYSHRL"), N.Y.
Exec. Law §§ 290 et seq.  Defendant construes plaintiff's com-
plaint to be asserting additional claims for violations of the
minimum wage, overtime and anti-retaliation provisions of the
Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.  By
notice of motion dated September 13, 2013 (Docket Item 17),
defendant moves for an Order pursuant to Fed.R.Civ.P. 56, grant-

ing it summary judgment as to plaintiff's claims arising under the FLSA and dismissing plaintiff's complaint.

The parties have consented by my exercising plenary jurisdiction over this action pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, defendant's motion is granted with respect to plaintiff's claims arising under the FLSA. Plaintiff is also granted thirty days to oppose summary judgment independent of defendant's motion on plaintiff's remaining claims arising under the ADEA and NYSHRL.

II.  Facts

A.  Facts Giving Rise
    to Plaintiff's Claims

This is an action arising out of plaintiff's employment as a sales associate for the AP from June 2010 to September 2011.

On June, 14, 2010, plaintiff was hired by the AP as a sales associate in the AP's video archive and business develop-ment group (the "Group") (Affidavit of Alison Quan, dated Sept. 13, 2013, (Docket Item 20) ("Quan Aff.") at ¶ 2).  Plaintiff's offer letter stated that she would earn a salary of $40,000 and "2% commission on all sales that [she] bill[ed] or generate[d]" (Quan Aff. at ¶ 5).  In addition to her sales duties, plaintiff had some research responsibilities (Quan Aff. at ¶ 2; Deposition

of Dolores McNamara, taken on June 25, 2013 ("McNamara Dep.") at
15:15-16:5, annexed as Exhibit A to the Affirmation of Joseph B.
Cartafalsa, Esq., dated Sept. 13, 2013, (Docket Item 22)
("Cartafalsa Aff.")).  She made phone calls, acquired new cli-
ents, documented orders, billed clients, generated contracts and
conducted research (McNamara Dep. at 15:15-16:5).  The parties
dispute whether plaintiff's job duties also included performing
research for other employees in the Group.  Defendant contends
that at or about the time of her hire, plaintiff was informed by
the AP's sales director, Lloyd Pawlak, that she would be perform-
ing research for other employees in the Group; plaintiff contends
that she was only expected to perform research on accounts that
she generated or billed (see Affidavit of Lloyd Pawlak, dated
Sept. 13, 2013, (Docket Item 21) ("Pawlak Aff.") at ¶ 3; McNamara
Dep. at 15:11-14, 69:2-18).

    In November of 2010, plaintiff was assigned to perform
research for her direct supervisor, Claribel Torres, in order to
help Torres secure business from a potential customer (the
"Classmates.com Account") (Complaint, dated Apr. 3, 2012, (Docket
Item 2) ("Compl.") at 6;[1] Quan Aff. ¶ 6).  Plaintiff did not

_____

    [1]Plaintiff has utilized the form Complaint for Employment
Discrimination provided by the Court's Pro Se Office, to which
she has attached several documents that are not paginated.  The
                                              (continued...)

'generate' or 'bill' the Classmates.com Account, and, therefore, under the terms of her offer letter and the AP's stated policies, was not entitled to a commission on any income generated from the Classmates.com Account (Pawlak Aff. at ¶¶ 6-7).  Shortly after plaintiff began performing research for Torres, Torres promised to split with plaintiff the commission Torres would receive for securing the Classmates.com Account (McNamara Dep. at 12:15-13:14).  Torres reiterated this promise to plaintiff on three occasions, but no other employees at the AP were aware of their agreement (McNamara Dep. at 13:5-14:11, 14:15-15:6).

On December 14, 2010, the Group held a staff meeting in order to discuss the implementation of a new billing system at the AP.  During that meeting, Torres "stood up in front of everyone and said [to plaintiff] [']are you sure you are going to be able to get this[']" (McNamara Dep. at 79:12-25; <u>see</u> <u>also</u> Compl. at 6).  Plaintiff was the only employee more than forty years old in the meeting and was the only employee who was asked this question (Compl. at 6).

In January 2011, Torres received a commission from the Classmates.com Account (Compl. at 6; McNamara Dep. at 26:13-

───────────────

[1](...continued)
citations herein utilize the pages numbers assigned to the attachments by the Court's electronic filing system.

27:3).  When plaintiff requested a portion of the commission, Torres told her that the AP would not allow her to split the commission (Compl. at 6; McNamara Dep. at 10:11-25).

On February 9, 2011, plaintiff attended a meeting with Pawlak.  In the meeting plaintiff explained that Torres had refused to split the commission with her (Pawlak Aff. at ¶ 8).  Pawlak told plaintiff that she was not entitled to and would not be paid a commission for the research she performed for the Classmates.com Account (Pawlak Aff. at ¶ 8).  However, Pawlak subsequently approved and the AP paid plaintiff a discretionary bonus of $1,000 for the research she performed for the Classmates.com Account[2] (Pawlak Aff. at ¶ 8).

Following plaintiff's meeting with Pawlak, plaintiff was informed that she would start performing research for the entire Group in addition to the normal sales and research duties related to her own accounts (McNamara Dep. at 11:7-13).  Plain-tiff would also be responsible for completing administrative tasks for Torres including setting up "a messenger service" and generating mailing labels (Compl. at 6-7; McNamara Dep. at 102:9-103:10).  Plaintiff alleges that these additional tasks were

---

[2]Plaintiff alleges that defendant also failed to pay her $200 that she was to receive for winning an internal sales competition.  Defendant states that plaintiff was recently given a $200 gift card (Compl. at 6; Cartafalsa Aff. at ¶ 5).

onerous and that they would have prevented her from reaching her
annual bonus goals (Compl. at 7).

On or about March 7, 2011, plaintiff requested a
reduction in either her research or sales responsibilities
(Compl. at 7; Quan Aff. at ¶ 11).  The AP agreed to eliminate
plaintiff's sales responsibilities with the proviso that plain-
tiff would no longer be eligible to earn commissions (Compl. at
7; Quan Aff. at ¶ 11).

On April 29, 2011, plaintiff met with Torres.  Torres
told plaintiff that she had overheard plaintiff speaking with co-
workers about her salary and that plaintiff was adversely affect-
ing the morale of the Group (Compl. at 7).  Torres also told
plaintiff that she was "going to have to write [plaintiff] up"
and that plaintiff might not be a good fit for the company
(Compl. at 7).

Three days later, on May 2, 2011, plaintiff met with
the AP's Human Resources Department.  She recounted her interac-
tions with Torres and requested an intervention (Compl. at 7).

In or about August 2011, plaintiff refused to perform
the job duties of her new position and requested that she be
considered for an alternate sales position at the AP (Quan Aff.
at ¶ 13).  Plaintiff's request was denied because the AP believed
that she was not qualified for the sales position (Quan Aff. at ¶

6

13).  Plaintiff requested that she be terminated, but was told by the Human Resources Department that if she did not perform her job duties, the AP would consider plaintiff to have voluntarily resigned (Quan Aff. at ¶ 13).  On September 2, 2011, plaintiff voluntarily resigned from her employment, and the AP accepted plaintiff's resignation (Quan Aff. at ¶ 14).

### B.  Procedural Background

On December 5, 2011, plaintiff filed a claim against defendant with the  Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of sex and age in violation of Title VII and the ADEA (Compl. at 11).  On January 11, 2012, the EEOC issued plaintiff a notice of dismissal and right to sue letter (Complaint at 9).[3]

## III.  Analysis

### A.  Plaintiff's Claims
### & Defendant's Motion

Although poorly drafted, plaintiff's complaint may be read to assert claims of age discrimination and retaliation under the ADEA and NYSHRL.  In the form complaint plaintiff used to

---

[3]Plaintiff does not assert any claims under Title VII in this lawsuit.

7

commence this action, plaintiff indicated that defendant's discriminatory acts consisted of "unequal terms of employment," "retaliation" and "unpaid wages."  These correspond to the acts described in plaintiff's filing with the EEOC, in which plaintiff checked the boxes indicating that she had suffered retaliation and discrimination because of her age (Compl. at 11).  Moreover, in a letter plaintiff sent the AP before filing a charge with the EEOC, she alleged that she had been subjected to a hostile work environment, retaliation and discrimination on the basis of age in violation of federal and state law and set forth the facts giving rise to those claims (Compl. at 5).  Relying on statements plaintiff made at her deposition and on omissions in the com-plaint, defendant contends that plaintiff is not bringing claims under the ADEA (Def.'s Mem. at 2 ("Plaintiff admitted under oath that she is **not** pursuing claims under the ADEA or other EEO statute[s].") (boldface in original); Compl. at 1, 3).  However, plaintiff's deposition testimony on the nature of the claims she is asserting is equivocal,[4] and she stated explicitly at the

---

[4]At her deposition, plaintiff testified:

> Q. And you're not suing for age discrimination now, right?
>
> A. No, I'm not, despite the fact that [Torres] did have a few nasty comments during my time there.  We were
>                                        (continued...)

initial pre-trial conference on November 9, 2012 that she was
alleging age discrimination and retaliation.  In light of plain-
tiff's (albeit ambiguous) representations, and my obligation to
read plaintiff's submissions as asserting the strongest arguments
they suggest, <u>Walker v. Schult</u>, 717 F.3d 119, 124 (2d Cir. 2013),
I conclude that the complaint asserts claims under the ADEA and
the NYSHRL.

Defendant's memorandum of law in support of its motion
for summary judgment assumes that plaintiff has asserted only
claims under the minimum wage, overtime and anti-retaliation
provisions of the FLSA (<u>see</u> Memorandum of Law in Support of the
Associated Press' Motion for Summary Judgment, dated Sept. 13,
2013, (Docket Item 23) ("Def.'s Mem.") at 5-8).  Plaintiff's
opposition makes no arguments that are responsive to those raised

---

[4](...continued)
learning a new system of billing.  And she just stood
up in front of everyone and said, are you going to be
able to get this . . . .

Q. Did [Torres] make any other comments like that?

A. She always had digs for me, but that was the one
that pretty much embarrassed me the most, that I
remember like yesterday.  <u>But I'm not going for age, I
mean that's not it</u>.

(McNamara Dep. at 79:12-80:11) (emphasis added).  It is difficult
to discern from this exchange whether plaintiff was no longer
suing for age discrimination or whether she simply considered
this claim to be of secondary importance to her other claims.

by defendant, cites not law and provides no additional factual information (Plaintiff's Opposition to Defendant's Motion for Summary Judgment, dated Oct. 21, 2013, (Docket Item 25) ("Pl.'s Mem.")).  Accordingly, I assume that plaintiff's complaint asserts claims under the FLSA and shall address whether summary judgment is warranted as to those claims.

B.  Summary Judgment Standards

        The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party . . . is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.C. 2505, 91 L.Ed.2d 202 (1986).  To grant the motion, the court must determine that there is no genuine issue of material fact to be tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.C. 2548, 91 L.Ed.2d 265 (1986).  A genuine factual issue derives from the "evidence [being] such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S.C. 2505.  The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.C. 1348, 89 L.Ed.2d 538 (1986), or by a factual argument based on "conjecture or surmise," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The Supreme Court teaches that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury

> or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.C. 1575, 20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526 U.S. 541, 552, 119 S.C. 1545, 143 L.Ed.2d 731 (1999). It is a settled rule that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

"Material facts are those which 'might affect the out-come of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Coppola v. Bear Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence pre-sented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778,

788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, supra, 477 U.S. at 322-23, citing Fed.R.Civ.P. 56.

As noted in McClellan v. Smith, supra, 439 F.3d 137, a court cannot make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.

> [T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555 (1990); Liberty Lobby, Inc., supra, at 254; Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, n.6 (1962).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Liberty Lobby, supra, at 255.  Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.  See Wright & Miller 299.  That is, the court should give credence to the evidence favoring the nonmovant as well

as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id., at 300.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000)[5]; accord In re Dana Corp., 574 F.3d 129, 152 (2d Cir. 2009); Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001).

Defendant notes in its reply that plaintiff has not filed an opposing statement of the material facts as required by Local Civil Rule 56.1 and that pursuant to that rule, I may deem the statements set forth in defendant's Rule 56.1 statement to be admitted.  "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and, thus, "it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file [a counter-statement under Local Rule 56.1]." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (inner quotation marks and citations omitted).  Due to the limited record in this case, as a matter of discretion, I decline to consider as uncontroverted the facts set forth in defendant's Rule 56.1 statement by virtue of plaintiff's default, and, to the

---

[5]Although the Court in Reeves was reviewing the denial of a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50, the same standards apply to a motion for summary judgment pursuant to Fed.R.Civ.P. 56.  Reeves v. Sanderson Plumbing Prods., Inc., supra, 530 U.S. at 150.

extent permitted by the authorities discussed above, I have considered the submissions from both parties in assessing whether the defendant is entitled to summary judgment. See Gantt v. Horn, 09 Civ. 7310 (PAE), 2013 WL 865844 at *1 n.2 (S.D.N.Y. Mar. 8, 2013) (Engelmayer, D.J.) (reviewing of the record to fill gaps resulting from plaintiff's failure to file a 56.1 counter-statement).[6]

    C.  Application of the
        Foregoing Principles

        1.  Plaintiff's FLSA Claims

        Defendant contends that it is entitled to summary judgment on plaintiff's minimum wage, overtime and retaliation claims under the FLSA because (1) plaintiff has not shown that defendant failed to pay her either the minimum wage or the overtime rate for hours worked beyond forty in a given workweek

_____

    [6]Plaintiff's failure to controvert defendant's motion does not, of course, relieve the defendant of the burden of "adduc[ing] admissible evidence in the record to support the factual assertions contained in [its] Rule 56.1 Statement, as [plaintiff] 'is not required to rebut an insufficient showing.'" NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev., 07 Civ. 3378 (GEL), 2007 WL 4233008 at *1 n.1 (S.D.N.Y. Nov. 30, 2007) (Lynch, D.J.), quoting Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003); see also Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

and (2) plaintiff's complaints to Pawlak and the AP's Human
Resources Department were internal complaints, and, do not,
therefore, constitute protected activity under the FLSA (Def.'s
Mem. at 5-6).

      Pursuant to the FLSA, every employer covered by the
FLSA must pay each employee a minimum of $7.25 per hour.  29
U.S.C. § 206(a).  In addition, an employee must be compensated at
a rate of no less than 1.5 times the regular rate of pay for any
hours worked in excess of forty per week.  29 U.S.C. § 207(a).
However, "[t]he FLSA statute requires payment of minimum wages
and overtime wages only; therefore, the FLSA is unavailing where
wages do not fall below the statutory minimum and hours do not
rise above the overtime threshold."  Nakahata v. New York-Presby-
terian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013)
(citations omitted).  An employee asserting an overtime violation
must demonstrate that she worked "40 hours . . . in a given
workweek as well as some uncompensated time in excess of the 40
hours."  Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,
supra, 723 F.3d at 201.  Moreover, an employee fails to state a
claim for a minimum wage violation "unless [her] average hourly
wage falls below the federal minimum wage."  Lundy v. Catholic
Health Sys. of Long Island, Inc., 711 F.3d 106, 115 (2d Cir.
2013).  A plaintiff's average hourly wage is determined "by

dividing his total remuneration for employment . . . in any
workweek by the total number of hours actually worked by him in
that workweek for which such compensation was paid."  29 C.F.R. §
778.109.

Plaintiff has the burden of showing insufficient
payment for hours worked.  Yang v. ACBL Corp., 427 F. Supp. 2d
327, 333 (S.D.N.Y. 2005) (Sand, D.J.).  However, if at the
summary judgment stage the employer fails to keep the required
records, a plaintiff may meet this burden "'if he proves that he
has in fact performed work for which he was improperly compen-
sated and if he produces sufficient evidence to show the amount
and extent of that work as a matter of just and reasonable
inference.'"  Reich v. S. New England Telecomms. Corp., 121 F.3d
58, 66-67 (2d Cir. 1997), quoting Anderson v. Mt. Clemens Pottery
Co., 328 U.S. 680, 687 (1946).  "A plaintiff may do so solely
through his or her own recollection."  Gunawan v. Sake Sushi
Rest., 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012); Yang v. ACBL
Corp., supra, 427 F. Supp. 2d at 335.

To the extent plaintiff's complaint may plausibly be
read as asserting minimum wage and overtime violations of the
FLSA arising from the AP's failure to pay plaintiff a sales
commission, defendant is entitled to summary judgment on those
claims.  Plaintiff has not offered any evidence that she worked

16

more than forty hours in a given workweek, nor has she come
forward with any evidence that she was paid less than the minimum
wage.  To the contrary, at all times during plaintiff's employ-
ment at the AP she was earning a salary of $40,000 per year, and,
until the last three months of her employment, was also earning
2% commission of any sale that she generated and billed (Quan
Aff. at ¶ 5).  Thus, plaintiff's compensation was more than twice
the minimum wage.[7]  That plaintiff may have entered into a con-
tractual agreement with Torres for an additional sum is irrele-
vant to defendant's obligations under the FLSA.  Whether plain-
tiff entered into an enforceable contract with Torres is a matter
of state contract law, and even if I were to assume that such a
contract existed, its violation would not give rise to an action
under the FLSA.  See Monahan v. Cnty. of Chesterfield, 95 F.3d
1263, 1284 (4th Cir. 1996) ("Simply put, if the terms of the
employment agreement do not violate the FLSA, freedom of contract
prevails."); see also Sosnowy v. A. Perri Farms, Inc., 764 F.
Supp. 2d 457, 469 (E.D.N.Y. 2011); Timony v. Todd Shipyards
Corp., 59 F. Supp. 779, 781 (S.D.N.Y. 1945) (Coxe, D.J.), aff'd,
151 F.3d 336.  Because plaintiff has failed to come forward with

---

[7]If I assume that plaintiff worked forty-hour weeks for
fifty two weeks each year, she was paid an average hourly wage of
$19.23 based on the salary portion of her income alone.

any evidence as to her total income or hours worked, summary judgment in favor of defendant is appropriate as to plaintiff's overtime and minimum wage claims.

　　　　　To the extent plaintiff asserts a retaliation claim under the FLSA, defendant is entitled to summary judgment as to that claim as well.  The FLSA's anti-retaliation provision forbids employers from discharging or discriminating against any employee who has "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . ."  29 U.S.C. § 215(a)(3).  "[A] plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010); Graves v. Deutsche Bank Secs., Inc., 548 F. App'x 654, 656 (2d Cir. 2013); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).  The Court of Appeals for the Second Circuit has held that Section 215 does not encompass "internal complaints" made to an employer, as opposed to complaints made to a governmental agency or the filing of a lawsuit.  See Lambert v.

18

Genesee Hosp., 10 F.3d 46, 55-56 (2d Cir. 1993), abrogated on other grounds, Kasten v. Saint-Gobain Performance Plastics Corp., --- U.S. ---, ---, 131 S.C. 1325, 1335 (2011); accord Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 473 n.6 (S.D.N.Y. 2013) (Furman, D.J.); Hyunmi Son v. Reina Bijoux, Inc., 823 F. Supp. 2d 238, 243 (S.D.N.Y. 2011) (Scheindlin, D.J.).  Nor does it encompass complaints that are not "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."  Kasten v. Saint-Gobain Performance Plastics Corp., supra, 131 S.C. 1335; Kassman v. KPMG LLP, supra, 925 F. Supp. 2d at 472.

Plaintiff has not proffered any evidence that she filed any complaints regarding FLSA violations prior to her resignation.  Plaintiff's complaints to Pawlak and the AP's Human Resources Department were internal complaints made to her employer, and, therefore, are not protected by the FLSA's anti-retaliation provision.  Moreover, the only evidence in the record on this issue establishes that plaintiff complained only that she had not been paid what she had been promised, not that defendant was violating the FLSA.

Accordingly, defendant's motion for summary judgment is granted as to plaintiff's minimum wage, overtime and retaliation claims under the FLSA.

          2.  Plaintiff's ADEA
              & NYSHRL Claims

As previously discussed, defendant's motion does not address plaintiff's claims pursuant to the ADEA and NYSHRL.

However, as outlined below, plaintiff's age-discrimination and retaliation claims suffer from several clear defects, and, therefore, it appears, at least preliminarily, that summary judgment should be granted on plaintiff's remaining claims mea sponte absent a showing by plaintiff that a reasonable jury could return a verdict in her favor.  "Under Federal Rule of Civil Procedure 56(f), district courts have discretion to grant summary judgment sua sponte '[a]fter giving notice and a reasonable time to respond' and 'after identifying for the parties material facts that may not be genuinely in dispute.'"  Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., --- F.3d ---, ---, Nos. 12-2412-cv, 12-2645-cv, 2014 WL 2219162 at *4 (2d Cir. Jan. 27, 2014), quoting Fed.R.Civ.P. 56(f).  Accordingly, plaintiff is granted thirty

days to submit evidence in opposition to the following grounds

for dismissing her remaining claims under the ADEA and NYSHRL.[8]

First, plaintiff has not presented evidence sufficient

to establish a _prima_ _facie_ case of age discrimination under the

ADEA and NYSHRL.  In order to do so, a plaintiff must demonstrate

that she is (1) within the protected age group, (2) qualified for

the position, (3) suffered some adverse employment action, and

(4) that the circumstances surrounding the adverse employment

action give rise to an inference of discrimination.  See _Spiegel_

---

[8]Because defendant's motion for summary judgment does not
address plaintiff's claims under the ADEA and NYSHRL, plaintiff
was not required to present evidence sufficient to demonstrate a
genuine issue of material fact as to those claims.  Where, as
here, the non-moving party has no reason to suspect that the
Court will rule on claims not identified by the moving party, the
Court's entry of summary judgment _sua_ _sponte_ is improper unless
the Court first gives the non-moving party notice and some
opportunity to respond.  _Smith v. Perkins Bd. of Educ._, 708 F.3d
821, 829-30 (6th Cir. 2013); _Coward v. Jabe_, 474 F. App'x 961,
963-64 (4th Cir. 2012); _Gentry v. Harborage Cottages-Stuart,_
_LLLP_, 654 F.3d 1247, 1261 (2d Cir. 2011); _J.D. Fields & Co. v._
_U.S. Steel Int'l, Inc._, 426 F. App'x 271, 280-81 (5th Cir. 2011);
_Norse v. City of Santa Cruz_, 629 F.3d 966, 971 (9th Cir. 2010);
_Pourghoraishi v. Flying J, Inc._, 449 F.3d 751, 765-66 (7th Cir.
2006); _Otis Elevator Co. v. George Wash. Hotel Corp._, 27 F.3d
903, 910 (3d Cir. 1994); _see_ _also_ _Celotex Corp. v. Catrett,_
_supra_, 477 U.S. at 326 ("[D]istrict courts are widely
acknowledged to possess the power to enter summary judgments _sua_
_sponte_, so long as the losing party was on notice that [it] had
to come forward with all of [its] evidence."); _Swatch Grp. Mgmt._
_Servs. Ltd. v. Bloomberg L.P._, _supra_, 2014 WL 2219162 at *4;
_accord_ _City of New York v. Chavez_, 944 F. Supp. 2d 260, 278
(S.D.N.Y. 2013) (Forrest, D.J.); _Capital Records, Inc. v._
_MP3tunes, LLC_, 07 Civ. 9931 (WHP), 2013 WL 1987225 at *7
(S.D.N.Y. May 14, 2013) (Pauley, D.J.).

v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010); Terry v. Ashcroft,
336 F.3d 128, 137-38 (2d Cir. 2003).  Even if I were to assume
that plaintiff has satisfied the first three requirements,
plaintiff cites only one instance that she believes demonstrates
that she was denied wages, given more onerous job duties and
constructively discharged because of her age.  Plaintiff alleges
that on December 14, 2010 at a Group meeting to implement the
AP's new billing system, Torres said to her in front of the Group
"are you sure you are going to be able to handle this" (Compl. at
6).  Plaintiff further alleges that she was the only person more
than forty years old at the meeting and that she was the only
person asked this question.  Without more context, however, it is
not clear from plaintiff's description of the incident whether
Torres's question had any connection to plaintiff's age.
Morever, although a stray remark may lend support to plaintiff's
age discrimination claim when considered with other evidence, "by
itself [such remarks are] usually not sufficient proof to show
age discrimination." Carlton v. Mystic Transp., Inc., 202 F.3d
129, 136 (2d Cir. 2000); accord Thompson v. ABVI Goodwill Servs.,
531 F. App'x 160, 162 (2d Cir. 2013); Kearney v. ABN AMRO, Inc.,
738 F. Supp. 2d 419, 430-32 (S.D.N.Y. 2010) (Batts, D.J.).
Plaintiff has not brought to light other facts that, when read in

context with the incident she describes would suggest an infer-
ence of age discrimination.

Second, plaintiff has not presented evidence establish-
ing a prima facie case of retaliation under the ADEA and NYSHRL.
To establish a prima facie case under these statutes, she must
show:  (1) that she engaged in protected activity, (2) that she
suffered an adverse employment action and (3) that there is a
causal connection between the protected activity and the adverse
action.  See Gorzynski v. JetBlue Airways Corp., supra, 596 F.3d
at 110; see also Wanamaker v. Columbian Rope Co., 108 F.3d 462,
465, 467 (2d Cir. 1997).  Plaintiff alleges that she was given
more burdensome job responsibilities because she disclosed to
several employees that Torres broke a promise to split her
commission with plaintiff.  However, plaintiff has not proffered
any evidence that her complaints referred to unlawful discrimina-
tion on the basis of her age or that she planned to assert her
rights under the ADEA or NYSHRL.  Nor do the facts surrounding
Torres's alleged failure to pay plaintiff suggest that defendant
diminished plaintiff's compensation or increased her duties in
response to plaintiff's complaints regarding alleged violations
of the ADEA and the NYSHRL.  Complaints that do not alert the
employer of an employee's assertion of rights under the ADEA and
the NYSHRL are not protected under the anti-retaliation provi-

23

sions of the ADEA or corresponding state laws.  <u>See</u>
<u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276,
292 (2d Cir. 1998) ("[I]mplicit in the requirement that the
employer have been aware of the protected activity is the re-
quirement that it understood, or could reasonably have under-
stood, that the plaintiff's opposition was directed at conduct
prohibited by [the ADEA].");  <u>Caskey v. Cnty. of Ontario</u>, 800 F.
Supp. 2d 468, 472 (W.D.N.Y. 2011);  <u>Cordoba v. Beau Dietl &
Assocs.</u>, 02 Civ. 4951 (MBM), 2003 WL 22902266 at *9 (S.D.N.Y.
Dec. 8, 2003) (Mukasey, D.J.).  There is no indication that
plaintiff raised with defendant the possibility that age discrim-
ination had occurred until after she was terminated (<u>See</u> Compl.
at 5).

In order to avoid the entry of summary judgment of
plaintiff's claims under the ADEA and NYSHRL, plaintiff must
submit sufficient evidence to establish the essential elements
described on pages 21-24.  Fed.R.Civ.P. 56(c).[9]

IV. <u>Conclusion</u>

Accordingly, for all the foregoing reasons, defendant's
motion for summary judgment (Docket Item 17) is granted with

---

[9]A copy of the Local Rule 56.2 notice to <u>pro</u> <u>se</u> litigants is
attached to this Opinion and Order for plaintiff's benefit.

respect to plaintiff's claims under the FLSA.  Plaintiff is also

granted thirty days to present evidence or otherwise show cause

why summary judgment should not be granted dismissing the com-

plaint to the extent it can be read to assert claims under the

ADEA or the NYSHRL.  The Clerk of the Court is directed to mark

Docket Item 17 closed.

Dated:  New York, New York .
        August 21, 2014

                              SO ORDERED


                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Ms. Dolores McNamara
Apt. 1R
110 Morris Street
Jersey City, New Jersey   07302

Joseph B. Cartafalsa, Esq.
Putney Twombly Hall & Hirson LLP
521 Fifth Ave.
New York, New York   10175

25

# Local Rules of the
# United States District Courts for the
# Southern and Eastern Districts of New York

Effective September 3rd, 2013

with amendments to the
SDNY Rules for the
Division of Business Among District Judges
Rule 13 effective 1/1/2014,
Rules 18 and 21 effective 1/13/2014

Adopted by the Board of Judges of the
Eastern District of New York and the
Southern District of New York
Approved by the Judicial Council of the Second Circuit

which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).

## COMMITTEE NOTE

The requirement embodied in Local Civil Rule 56.1 is firmly rooted in the local practice of the Southern and Eastern Districts, and the Committee recommends its retention. The language of Local Civil Rule 56.1 was revised in 2004 to make clear that any statement pursuant to Local Civil Rule 56.1 must be divided into brief, numbered paragraphs, that any opposing statement must respond specifically and separately to each numbered paragraph in the statement, and that all such paragraphs in both statements and opposing statements must be supported by citations to specific evidence of the kind required by Fed. R. Civ. P. 56(c). The Committee believes that the language adopted in 2004 sets forth these requirements clearly, and does not recommend any changes in that language.

### Local Civil Rule 56.2.  Notice to Pro Se Litigant Who Opposes a Summary Judgment

Any represented party moving for summary judgment against a party proceeding *pro se* shall

serve and file as a separate document, together with the papers in support of the motion, the

following "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" with the full

texts of Fed. R. Civ. P. 56 and Local Civil Rule 56.1 attached.   Where the pro se party is not the

plaintiff, the movant shall amend the form notice as necessary to reflect that fact..

### Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment

The defendant in this case has moved for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure.   This means that the defendant has asked the Court to decide this

case without a trial, based on written materials, including affidavits, submitted in support of the

motion.   THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED

WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing

sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil

Procedure and by Local Civil Rule 56.1.   The full text of Rule 56 of the Federal Rules of Civil

Procedure and Local Civil Rule 56.1 is attached.

In short, Rule 56 provides that you may NOT oppose summary judgment simply by relying

upon the allegations in your complaint.   Rather, you must submit evidence, such as witness  statements

or documents, countering the facts asserted by the defendant and raising specific facts        that support

your claim.  If you have proof of your claim, now is the time to submit it.  Any witness  statements

must be in the form of affidavits.  An affidavit is a sworn statement of fact based on  personal

knowledge stating facts that would be admissible in evidence at trial.  You may submit your  own

affidavit and/or the affidavits of others.  You may submit affidavits that were prepared  specifically in

response to defendant's motion for summary judgment.

If you do not respond to the motion for summary judgment on time with affidavits and/or

documents contradicting the material facts asserted by the defendant, the Court may accept

defendant's facts as true.  Your case may be dismissed and judgment may be entered in defendant's

favor without a trial.

If you have any questions, you may direct them to the Pro Se Office.

## COMMITTEE NOTE

Local Civil Rule 56.2 plays a valuable role in alerting pro se litigants to the potentially serious consequences of a motion for summary judgment, and to the requirements for opposing such a motion. The Committee recommends certain changes in the text of the notice required by the rule in order to make it more understandable to non-lawyers.